## SOVEREIGN CAMP OF WOODMEN OF THE WORLD v. BAILEY.
### (No. 6594.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 12, 1921. Rehearing Denied Nov. 9, 1921.)

**1. Witnesses ⊚⇒302—Court's question to witness, "Do you claim your protection?" held not ground for reversal.**

Court's question to witness, "Do you claim your protection?" in response to statement by witness that he had been arrested, *held* not ground for reversal as against contention that court should not have warned witness that he was not compelled to give incriminating testimony.

**2. Witnesses ⊚⇒297—Refusal to require witness to answer question as to whether he would have shot unarmed man held not error.**

Refusal to require witness to answer question, "Would you shoot an unarmed man except in the exercise of the right of self-defense or under other lawful justification?" *held* not error.

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Witnesses ⬦➡308—Good faith in refusing to answer question for fear testimony might incriminate him may be inquired into.**

The good faith of a refusal to answer questions because witness fears answers would tend to incriminate him may properly be inquired into.

**4. Insurance ⬦➡826(2) — Charge on whether deceased met death while making assault held proper.**

In action for death benefit, the defense being that deceased met his death in making an assault, court's charge *held* to properly submit such defense when considered as a whole.

**5. Trial ⬦➡260(1) — Refusal of requested charge covered by general charge not error.**

Refusal of requested charge covered by the court's general charge *held* not error.

**6. Insurance ⬦➡825(3) — Whether deceased died while making assault held for the jury.**

In action for death benefit, the defense being that deceased died while making an assault in violation of provision invalidating certificate in the event of death caused by the violation or attempted violation of law, whether deceased was shot while making such assault *held* for the jury.

Appeal from District Court, Victoria County.

Suit by O. F. Bailey, guardian, against the Sovereign Camp of the Woodmen of the World. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 222 S. W. 550.

R. L. Daniel, of Victoria; and E. D. Henry, John H. Bickett, Jr., and L. M. Bickett, all of San Antonio, for appellant.

Proctor, Vandenberge, Crain & Mitchell and Fly & Ragsdale, all of Victoria, for appellee.

COBBS, J. Suit was brought by appellee to recover on a benefit certificate issued by appellant to W. L. Bailey, now deceased, payable on his death to Willie Lee Bailey, his minor child.

The defense urged by the association was that by virtue of the provision of the certificate, as well as the constitution and by-laws thereof, in event a member holding such certificate should meet his death or die in consequence of the violation, or attempted violation, of the laws of the state or United States, the certificate would become null and void, and all rights thereunder become forfeited. Such is a correct statement of the legal effect of the certificate.

This suit was brought for the minor by O. F. Bailey, guardian, against appellant, and on a trial thereof by a jury a judgment was recovered against appellant for the sum of $4,515.

Alvin Holzheuser and Charlie Holzheuser were charged with the murder of W. L. Bailey, and were immediately arrested by virtue of a warrant issued by a magistrate and placed under bond, and such was their status at the time of this trial. No indictment seems to have been returned against them nor further criminal proceedings had in the district court. As they were the only living witnesses to the killing, the appellant sought to make out their case in part through their testimony, but they declined to testify upon the sole ground that their answers to the questions propounded would tend to incriminate them. Upon this ground the court refused to require them to testify, and the appellee excepted.

[1] The first assignment complains that the court should not have warned the witness that he was not compelled to answer any question that might tend to incriminate him. The bill of exceptions presented under that assignment is that after the question was propounded the witness said:

"Judge, I have been arrested and brought before the court and put under bond for the killing of this man and have not had any trial."

The court explained the law and asked, "Do you claim your protection?" and the witness replied, "Yes; I refuse to answer any questions, because it might incriminate me." This assignment is overruled.

The second assignment is similar and to the same effect, and is overruled.

[2] There is a difference made in appellant's third assignment when the question is asked:

"Would you shoot an unarmed man except in the exercise of the right of self-defense or under other lawful justification?"

For obvious reasons the court did not err in its ruling not to require the witness to answer this question, and the assignment is overruled.

The fourth assignment, raising the same question, is likewise overruled.

[3] It is well settled that the good faith of a refusal to answer questions because the witness fears such answers would tend to incriminate him may be properly inquired into. The motive that causes such refusal cannot always be seen on the face of the questions. No human being "can read the thought behind the brow." The effect of the answer on his rights is left mainly to the witness, who understands his peril and the direction to which the questions and answers may lead as to whether it were better not to answer such questions at all. But, as said, whether the refusal is made in good faith may always in a proper and legitimate way be the subject of inquiry. There is nothing further needs to be said in this case on that subject. The Chief Justice of this court laid down the correct rule in respect thereto for the guidance of the court in the trial of this case in 163 S. W. 684, and 183 S. W. p. 108, which holding was approved

---

by the Supreme Court in (Com. App.) 222 S. W. 550.

[4] Appellant, by the fifth, sixth, ninth, and tenth assignments, raises objections to the court's charge, claiming the issues were not properly submitted in the charge, which we have examined carefully. All the several paragraphs of a charge should be taken together as a whole, without unnecessary repetitions, and as submitting the issues raised by the pleading and the evidence. Then, applying to the charge the issues raised by the defensive pleadings and the evidence that the deceased came to his death in consequence of violation or attempted violation of the laws of this state —that is, making an assault upon Alvin or Charles Holzheuser, or unlawfully carrying a pistol—the charge correctly covers the subject. The charge defines and correctly informs the jury what it took to constitute each of these defenses, and in the fourth paragraph instructs the jury in effect, if the death of Bailey was in consequence of the violation or attempted violation of the laws of the state of Texas pleaded by defendant, then to return a verdict in favor of it.

The sixth paragraph was to the effect that, if Bailey made or attempted an unlawful assault upon Alvin or Charles Holzheuser, or either, and in consequence met his death at the hands of either, they acting in defense of themselves or of the other, the verdict will be for the defendant. If, on the other hand, they find from the preponderance of the evidence that Bailey met his death in consequence of an assault or attempted assault upon either of the said Holzheusers, or in consequence of any other violations of the laws of Texas as charged, to find for the plaintiff.

Practically this same charge was sustained by the Supreme Court in 222 S. W. 551. It was there reversed because of error in paragraph 8 in the charge of the court, which is not reproduced in the charge in the instant case.

Said assignments are overruled.

[5] The seventh assignment of error complains of the refusal of the court to give its requested special charge No. 1, defining the elements of the offense of unlawfully carrying a pistol, and the eighth is as to unduly displaying a pistol. As they are both comprehensively charged in the court's general charge, there was no reason to give them again. These assignments are overruled.

For the reasons hereinbefore given, that the general charge sufficiently and properly submitted all issues raised, the ninth and tenth assignments are likewise overruled.

The eleventh assignment of error complains that the testimony is not sufficient to support the judgment. The testimony now is, if anything, a little stronger in favor of appellee than it was on any previous trial.

It was said by the court on the first appeal (163 S. W. 684), in speaking of the declarations of the Holzheusers made immediately after the shooting, that they were a part of the res gestæ, and of probative force as to how the killing occurred, and, taken together in connection with the other circumstances were sufficient to take the case to the jury, and should have been submitted to them. Again on the second appeal (183 S. W. 108) the testimony was practically the same as again introduced here on this the third appeal. The court there said the testimony was too uncertain to justify a verdict that Bailey died in consequence of a violation of the law on his part, and that no one could reasonably conclude that Bailey was the aggressor, and that the affair was shrouded in mystery. The judgment of the trial court was affirmed, and on that point the judgment of the Court of Civil Appeals was affirmed by the Supreme Court, though it was reversed on account of a portion of the charge of the court not seemed to have been raised before or called to the attention of this court, but not now in the charge of the court. In addition to the testimony set out in the opinion of this court in 183 S. W. 108, Will Hutchinson testified:

"They went to the water trough, where Charlie washed Alvin's head and face off; he bathed the wound. I did not hear anything said. As to whether some one asked them what they had done or why they did it, Alvin asked him how he came to kill him, and he said, 'Well, if I had not killed him, he would have killed us both.' That was as they were coming to the water trough, Alvin asked Charlie that. There was no one else about the premises except these two boys and Bailey, and my wife, who was at the house. * * * After Charlie told Alvin, 'If I had not killed him, he would have killed us both,' I do not know what they did; I got my horse and went after old man Cudd."

[6] If Bailey was the aggressor and Alvin was in danger of great bodily harm or injury, it seems a foolish question for him to have asked Charlie, because he was in a better position to understand his own peril than Charlie was. Upon the question as to whether the apparent danger to his brother, Alvin, was such as under the circumstances would justify Charlie to kill, this would not prove that Bailey made an assault, felonious or otherwise, or that he was the aggressor or violated any law. It may have been he was acting purely and wholly in self-defense, resisting an assault upon his person by Alvin, who, it was evident from the question could see no reason for his brother's killing Bailey. The facts

truly presented a jury question, and the evidence supported the verdict.

We find no reversible error assigned, and the judgment is affirmed.

SMITH, J., entered his disqualification and did not sit in this case.